# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| LYNDA PATRICIA KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CV418-039 |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

FILED
Scott L. Poff, Clerk
United States District Court

By EKerr at 9:14 am, Jan 28, 2019

## REPORT AND RECOMMENDATION

Plaintiff Lynda Patricia King seeks judicial review of the Social Security Administration's denial of her application for Disability Insurance (DIB) and Supplemental Security Income (SSI) benefits.

## I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation

omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2015) (footnote added).

## II. ANALYSIS

King, who was 51 years old when her disability application was denied, alleges disability beginning July 2, 2012. Tr. 19, 79, 94. She has a limited education (11th grade) and past work experience as a nurse assistant, fast food cook, and hair stylist. Tr. 29, 67. After a hearing, ALJ John Mason issued an unfavorable decision. Tr. 19-31. He found that King's bilateral carpal tunnel syndrome, bilateral heel spurs, status post-rotator cuff repair, and depression constituted severe impairments but did not meet or medically equal a Listing. Tr. 21-24. Based on the evidence of record, the ALJ found that she retained the RFC for a subset of light work except that King

> can have no constant repetitive handling and fine finger manipulation bilaterally; avoid overhead reaching bilaterally; never work with the public; occasionally have non-intensive interaction with co-workers and supervisors to accomplish non-transactional work steps.

Tr. 24.

Plaintiff, he determined, was incapable of performing her past relevant work but could perform the requirements of representative work as a marker, cafeteria attendant, and cleaner, all light work with

an SVP[2] of 2. Tr. 30. King disagrees, arguing that the ALJ failed to properly weigh the medical opinion evidence and erred in his RFC assessments. Docs. 12 & 14.

### A.   Plaintiff's Physical Limitations

Dr. Ido Friedman, plaintiff's treating podiatrist, completed a January 2017 handicapped parking affidavit, opining that King is "severely limited" in her ability to walk and "is so ambulator[il]y disabled" that she cannot walk 200 feet without stopping to rest. Tr. 1117. She "cannot walk" without the use of "assistance from a brace, a cane, a crutch, another person, a prosthetic device, a wheelchair, or other assistive device" and requires a "permanent" parking permit to address her limitations. *Id*. The ALJ gave the affidavit opinion "little weight," despite Dr. Friedman's role as plaintiff's treating physician, because it was unsupported by the record. Tr. 28. Plaintiff herself, the ALJ noted, "did not identify an inability to walk without the use of an assistive device," and "generally had normal gait" except for a brief period of time following an injury. *Id*. She repeatedly reported no

---

[2]   Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, App. C.

difficulty walking and an examining physician opined she could walk and bear weight "as tolerated." *Id.*

Plaintiff argues that the ALJ violated the "treating physicians" rule that requires treating physicians' opinions to be weighed more heavily than other medical evidence because of the nature of the treating relationship. Doc. 12 at 20-21. Of course, a treating relationship does not mean a treating physician's opinion must be fully credited *per se*. An ALJ may discount a treating physician's opinion if he gives good reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2)-(3), 416.927(c)(2)-(3); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). While such an opinion is indisputably *valuable* to the ALJ's RFC assessment, it is the ALJ's responsibility (and not any doctor's) to assess the RFC based on the record as a whole. *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."); *see* 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) (the ALJ has the responsibility for determining a

claimant's RFC). Indeed, the ALJ need not adopt every limitation assessed by a *credited* medical source, nor must his RFC assessment mirror the opinion of every doctor. *Adams v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 531, 534 (11th Cir. 2014) (an ALJ's decision also need not address every limitation included in a physician's report as long as the written decision is clear that the ALJ considered both the physician's opinion and the plaintiff's condition as a whole); 20 C.F.R. §§ 404.1527(b), (c); 416.927(b), (c).

Here, plaintiff argues that the ALJ erred by saying she never argued that she needed an assistive device to ambulate. Doc. 12 at 20. But she didn't. *See* tr. 318 (adult function report noting she did not use a cane or crutches); tr. 364 (third-party adult function report noting same). No physician prescribed her a cane or other assistive device. Tr. 45 (testifying that a doctor once recommended she get crutches, but because she dislikes the effect on her shoulders she purchased a cane from the pharmacy instead); *see* SSR [3] 96-9p (requiring "medical

---

[3]   Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). SSRs are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed" to compel incorporation of an assistive device limitation into the RFC assessment), cited in *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009) (physician's completion of a handicapped placard application, noting that plaintiff "still uses a cane to walk," does not establish "the medical necessity for the use of a cane"; thus the ALJ's failure to incorporate that restriction into his RFC assessment was harmless).

King testified that she uses a cane to ambulate if she has to be out for "long," but also admitted that she had misplaced it some time before the hearing and in fact had not brought any assistive device with her. Tr. 46. She prefers to use a motorized scooter while shopping and uses a shopping cart to carry items (doc. 12 at 21), but her *preference* does not demonstrate a medical *need* for an assistive device. Indeed, King was repeatedly observed walking with a normal gait. Tr. 28, *see* tr. 457, 488, 491, 495, 499, 503, 514, 518, 669, 680, 768, 774, 781, 795, 799, 802, 824, 963, 1057. The ALJ permissibly discounted Dr. Friedman's opinion to the extent he opined that she required the use of an assistive device, as

being unfounded and unsupported in the record.

As to the portion of Dr. Friedman's opinion addressing the distance King can walk, she argues the ALJ erred by referring to Dr. Gregory Koch's discharge instructions that she could "walk and bear weight as tolerated." Tr. 28, citing 886 (St. Joseph's/Candler Hospital Emergency Room discharge instructions for July 2016 treatment for "lower extremity pain"). It is unclear that Dr. Koch's opinion that plaintiff could walk and bear weight "as tolerated" actually conflicts with Dr. Friedman's opinion that she cannot walk 200 feet unaided. *Compare* tr. 1117 *with* tr. 886. The Commissioner argues that the medical evidence in general demonstrates she can walk that distance — but cites only to evidence showing that, in an examination room, she walked without a limp and reported she didn't have problems walking. Doc. 13 at 10. None of those citations to the record, however, demonstrate the distance King can walk, either with or without assistance. *See id.* Her own activities of daily living don't demonstrate she can walk 200 feet or more without assistance. While the greatly weighted nonexamining, reviewing physicians did opine that King could walk six hours in an eight-hour day (tr. 27, citing tr. 87 & 122), the Court notes both that they

did not mention what distance King was capable of walking at one time and, even if they had, nonexamining, reviewing physicians' opinions, "standing alone[,] do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987). In other words, the Court is unable to conclude that the ALJ properly discredited Dr. Friedman's 200 feet radius limitation in light of the overall record, particularly given that he limited plaintiff to light work.[4] *See Sprinkel v. Berryhill*, 2017 WL 4172501 at *6 (S.D. Ga. Aug. 28, 2017) ("the Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision as delivered."). The Commissioner should re-evaluate that portion of Dr. Friedman's opinion.

## B.  Plaintiff's Mental Limitations

At Step 2, the ALJ found plaintiff was moderately limited in her abilities to understand, remember, or apply information, to interact with others, and to concentrate, persist, or maintain pace. Tr. 23-24. He further found plaintiff was mildly limited in her ability to adapt or

---

[4]  Light work requires "walking or standing to a significant degree," after all. *See* DOT 209.587-034 (marker), DOT 311.677-010 (cafeteria attendant), DOT 323.687-014 (cleaner).

9

manage herself. Tr. 24. Then, at Step 3, the ALJ found that she was limited to work with an SVP of 2 and only "occasional[ ] non-intensive interaction with co-workers and supervisors to accomplish non-transactional work steps." *Id.* The gap between the two steps, plaintiff argues, is unexplained.

The ALJ addressed plaintiff's social limitations, finding she could only tolerate occasional, non-intensive interaction with co-workers and supervisors. Her moderately constricted ability to handle complex information, too, *might* be captured in her limitation to work with an SVP of 2. *Compare Lane v. Berryhill*, 2017 WL 976923 at * 6-7 (S.D. Ga. Feb. 16, 2017) (restriction to a reasoning level of 2 is equivalent to a restriction to simple, routine tasks), *with* DOT 209.587-034 (marker), DOT 311.677-010 (cafeteria attendant), & DOT 323.687-014 (cleaner), all work with an SVP of 2 and reasoning level of $1^5$ or $2^6$. As *might* her moderate limitations in concentration, persistence, and pace. *See Pinion*

---

[5] A reasoning level of 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job."

[6] A reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations."

10

*v. Comm'r of So. Sec.*, 522 F. App'x 580, 583 (11th Cir. 2013) (ability to understand, remember and carry out simple instructions and tasks, *if* accompanied by a requirement for simple instruction and supportive supervision, appropriately accounted for moderate limitation in concentration, persistence or pace); *but see Winschel*, 631 F.3d at 1180-81. But no physician opined on the matter, and the ALJ didn't explain the conflict (assuming, that is, that he even considered that evidence in his analysis of plaintiff's mental RFC). *Richter v. Comm'r of Soc. Sec.*, 379 F. App'x 959 (11th Cir. 2010) (while ability to remember, understand, and carry out simple instructions differs from limitations related to concentration, persistence, and pace, where a physician opines that a plaintiff can do so *despite* those limitations, no error in failing to explicitly include them in the RFC assessment).

The Court cannot reweigh the evidence to provide an explanation. *Mills v. Astrue*, 226 F. App'x 926, 931-32 (11th Cir. 2007) (acknowledging evidence in the record not mentioned by the ALJ may support administrative decision but concluding that court could not "say the error was harmless without re-weighing the evidence," which would require "conjecture that invades the province of the ALJ"). Between Steps 2

11

and 4 the ALJ's assessment of plaintiff's moderate limitations in concentration, persistence, and pace and her ability to understand, remember, and or apply information became, *unexplained*, a limitation to an SVP of 2.  Remand is needed to explain the gap.

## III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision be **REVERSED** and the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

This report and recommendation (R&R) is submitted to the district judge assigned to this action. Given the lapse in government appropriations, this matter has been stayed by the district judge. Doc. 15.  Therefore, within 14 days of the lifting of the administrative stay in this case, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district

judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __25th__ day of January, 2019.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA